Good morning. May it please the Court. The District Court increased Mr. Fitzgerald's advisory guideline range from 41 to 51 months to 63 to 78 months, and then varied further upward to 120 months based upon inconsistent hearsay statements. Below, the District Court credited Ms. Walker's hearsay statements that Mr. Fitzgerald had pointed a firearm at her and threatened her as the basis to impose the four-level increase under 2K2.1b6b. The hearsay was inherently unreliable, and the District Court erred in relying upon these statements. Alternatively, even with considering these statements, the application of this enhancement was clear error. The specific statements that we're dealing with and that the prosecution relied upon were Ms. Walker's statements during a 911 call and her statements to the officers who arrived on the scene as seen on their body-worn cameras. These unsworn oral statements to law enforcement are the least reliable form of hearsay. So starting with that How can they be somewhat reliable given the close proximity to a 911 call, concern for her safety, report of a firearm, and ultimately a firearm was found? So the circumstances, it wasn't a delayed disclosure, you're correct, but there were circumstances to indicate that it was a strange situation and that she is calling 911 and saying, this man threatened me with a firearm. But at the same time, during this 911 call, the person she's stating threatened her with a firearm is in the back room. They're having a back-and-forth, or in the background, excuse me. They're having a back-and-forth. She's yelling at him to shut up. So it's not your, you know, the circumstances kind of cut both ways is our position. And what about the fact of him refusing the police entry upon their arrival on the call? Well, as he even, Mr. Fitzgerald stated, I think it doesn't corroborate that he threatened her with a firearm. What it shows is, as he told officers, he denied having Consistent with what she had previously disclosed about being a tense situation that potentially posed a hazard to her. It's consistent with the fact that he had a firearm, and it absolutely corroborates that. But it does not corroborate the act of threatening her with a firearm or pointing it at her. And that's, the issue here is there's multiple reasons why he might want to deny having a firearm and not let the officers in. As he even stated, and when he denied it, I can't. I'm a felon. So the fact that he would not let the officers into the apartment doesn't corroborate that this threat, which is the issue here today. It corroborates that he, there was evidence of criminal activity in there that he did not want the officers to find, but not to the fighting issue in this case. And I would note, one of the factors when this Court is considering the reliability of the statements is the consistency of them. And here we It would have been her motive to be dishonest. So there's evidence in the record that the two had a contentious relationship. In her statements with law enforcement towards the end, she notes that she's frustrated with him because he hasn't been paying rent. And she wants him to, you know, be contributing to the rent and contributing to the household. And she wanted him out of the house. She had previously stated this in filing this protective order and then later withdrawing it, that she wanted him out of the house, but he wouldn't leave. So her desire to get him out of the house could be a motive to lie. Also she's, she's also not I lie to the police if you know he's not supposed to have a gun and he's got a gun. I don't know if she knew Just tell the police he's got a gun. Yeah, I don't know if she knew that. Even if it's not, like, just a more, I don't know if you want to say, vindictive lying. She is not completely lucid, respectfully. She is, she even tells the officers that she gets confused. She is obviously in distress. But I think there's an indication of considering whether this should be considered as reliable to consider it as an out-of-court statement. Now the witness is deceased. Yes. How old was she at the time of the incident? That I don't know. She was, I know she was elderly and she was having health issues at the time of this incident, but I am not sure of her age. But I do know that she was already having health issues at that time. So, but going to this consistency, which I think is the biggest issues that there are with considering the reliability of these statements, on the 911 call she states, he threatened me yesterday with a firearm and today it is just words. And then when, at the point when Mr. Fitzgerald eventually does let the officers inside and then the officers are able to speak with Ms. Walker, she states, well, it was yesterday, no, the day before that he threatened her. And then when the officers are pressing her, well, we need more information, we need more details, she gets visibly frustrated and states, look, I don't know. I just know right now that he was threatening me. So, and then at this point, after these statements is the first time she states that he threatened her with a firearm today. And she acknowledges, as I stated, that she is confused. She states that it occurred 10 minutes ago. I think at that point the officers had been outside and Mr. Fitzgerald had been up on the balcony, as seen in the videos, for at least 20 minutes. So it couldn't have been 10 minutes ago and it would be inconsistent with what she stated on the 911 call. Counsel, what's the standard review that we're applying here? So I believe the standard review of whether the court should have considered these exhibits is abuse of discretion. And then the standard of review for whether the facts have been proven is clear error. And we talked a little bit about corroboration and I'll address some of the other issues and the points that the government makes as far as corroboration. The government relies heavily, and the district court did as well, on his prior threats. His prior convictions for threatening behavior. And I acknowledge the rules of evidence don't apply, but it appeared to be more of a propensity type of situation. What about the protective order that's a little bit more specific and maybe more recent? So the protective order was more recent. I think it was 6 months. I think it was in May 2022 and this incident was in November 2022. But she did ultimately withdraw that. And I don't think that is disputed. She stated so on the record that she withdrew it for reasons that don't make a whole lot of sense. They asked her why she withdrew the petition and she stated, well, I wanted him gone. Which the basis for what a domestic abuse petition accomplishes is getting that person out of the house and being a protective order. So is it your position that almost corroborates your version of what happened? In other words, that this could be of the same type of conduct that she did in the protective order that she's doing now? Yes, especially with the concerns and her stating that she wants him out of the house. She's frustrated that he's not contributing to the household and making these allegations and then later withdrawing them. Yes. I don't think it's disputed that she did withdraw that. This court could take judicial notice. It's clear from the docket that she did withdraw that. I'm sure we disagree on what that means. But it's our position that it can't be corroboration if she's made an allegation and withdrawn it. And if anything, it shows that this court should not consider her hearsay statements unreliable when she has a history of withdrawing these allegations. And I would note, even after this incident, in the Defense Exhibit A, it illustrates that Mr. Fitzgerald continued to live with Ms. Walker and Ms. Walker continued to express her frustrations with their relationship and that he was, he viewed her, he viewed that he had to just be a caretaker and they continued to have issues back and forth like that. But again, not violence and not threatening with a firearm. If there are no immediate questions, I would reserve the remainder of my time for rebuttal. Thank you. Thank you, Ms. Quigg. Mr. Timmons. May it please the Court, Counsel. My name is Ron Timmons. I'm an Assistant U.S. Attorney for the Northern District of Iowa here on behalf of the United States today. Your Honors, I think the facts of this case here today are pretty straightforward. We have, starting with the May 6, 2022 petition for relief from domestic violence by the victim, where she claims the defendant, quote, pointed a shotgun at me. She doesn't come out and say he threatened to kill me at that time, but she does make other statements in writing that are consistent with violent behavior. You fast forward to November 23rd of 2022. We have the 911 calls that you know about and the body cam footage. Before I forget, I'd like to note for the Court we talked about the defendant's lies about not possessing a gun that day. The Court talked about it. It quoted from the District Court. I forgot to pin-cite that for you. In Government Exhibit 5, the defendant lies, according to my notes, at the 21 minute and 40 second mark where he says there's no gun in there. This is when he first comes out of the apartment, finally. And then at the 27 minute and 20 second mark is when the discussion is had where, according to my notes, he says hell no to the question, can you have a gun in there or is there a gun in there. All of this evidence was found reliable by the District Court. There's sufficient reliability. Going forward, the Court reviewed it not only at sentencing but it also reviewed it in a motion in limine shortly before trial on August 23rd of 2023. You couple that with the defendant's criminal history. The evidence all points to the defendant pointing a shotgun at the victim and threatening to kill her. The defendant's criminal history, according to the PSR starting from the age of 19 well into his 60s committed a litany of offenses. Isn't it kind of telling that you're starting the evidence to support the reliability of the statement with his prior criminal history years ago? We've got somebody who hasn't told a consistent story so isn't that kind of where you have to start with her statements? I don't think that she told an inconsistent story. There were some, I take your point, there were some inconsistent statements. But the story taken as a whole is not inconsistent. It is not as if it is scatterbrained and all over the place. The 911 call starts with her saying he threatened me yesterday, today it's just words. He's gonna point a gun at me or future tense is what she used. I can't remember exactly. And then she said it was just 10 minutes ago. She said that well after that 911 call, yes. How do you factor that in? That there's this sort of moving time frame with someone who's kind of confused. I think that's in the record, you can see the video that she's not at her best health-wise. And so that's why I kind of wanted you to start there to help me understand why you believe it is as reliable as you're saying it is. Two things to that, Your Honor. Number one, victims of crimes are reliably confused a bit and flustered. Secondly, the timeline with the benefit of hindsight. I realize that most people, most officers responding to a 911 call of the nature that was provided would have assumed that he had just pointed a shotgun at her and that's why they were there. Looking through the record with the benefit of hindsight, it's clear she says it's under the bed now, he did it yesterday, he's gonna do it today. The officers arrive, Mr. Fitzgerald does come out, he's out from time to time but he's also back and forth. He comes out on a balcony, talks with the officers, goes back inside, the officers are standing around trying to figure out, what do we do, are we gonna breach the door? We're not sure, they know she's alive because they can hear her screaming while they're there. Eventually they get in and when they get in, the shotgun is not under a bed it's hidden behind a shower curtain. From the body cam, it's a little hard to tell, but could he have come into the apartment or the home and moved the gun from the bed to the bathroom without her seeing that? She's kind of in a corner. It's possible, but the point is that on the 911 call, and forgive me I don't know the specific time lapse, but between the time of the 911 call and by the time the officers find the gun and the defendant has walked out of the door I think it's plausible that that's when he pulled the shotgun out from underneath the bed. And my question is, could she, your understanding of the layout of the home, could she have seen that? She's kind of in a corner as I recall would that be out of her sight range? I can't say, Your Honor. I'm not sure. The point is that all of this evidence is further corroborated with the defendant's criminal history. As the court noted, the defendant had 13 assault-related convictions 7 involving female victims. Looking at all that, I think there is consistency of the victim's statements the timing and the nature of her statements are also in the government's favor here and the victim's demeanor at the time it's on film and it's on audio. There are I concede, portions that don't it's not a clear cut version of events right away but again, with the benefit of hindsight you walk through it it's quite obvious that the defendant pointed a shotgun at her and threatened to kill her as she stated repeatedly. Did the district court rely on the recording? Yes he found the 911 calls and the body cam footage sufficiently reliable. You add to that the other denying that there was a gun in there in the first place denying that he possessed a gun all of this adds up to hearsay statements that were sufficiently reliable and therefore the enhancement under 2K2.1B6B was appropriate and we would ask that you affirm the district court's ruling. Are there no further questions? Thank you Mr. Chairman So there's been discussion today about Mr. Fitzgerald lied and denied having a firearm and that that somehow corroborates Ms. Walker's statements. It does not. The question today isn't did Mr. Fitzgerald lie or was his statements reliable? He obviously lied when he denied having a firearm. It does not. The question today isn't The issue for this court is whether Ms. Walker's out of court statements are sufficiently reliable to be relied upon and to increase Mr. Fitzgerald's sentence as significantly as it did in this case. I would note based off the body cam I don't think there's any evidence it's not completely clear any evidence that Mr. Fitzgerald went back in from the point that the officers arrived. There was one officer stationed right in front of that balcony where he was outside as he was talking with the officers. It would be highly unusual if the person had called and said someone's threatening with a firearm if they just saw him go back in and did nothing. So your view of that video is that he never went back he wasn't going back and forth into the home and back out to that porch? It is not as clear as I would like to be but I don't believe that it shows that him going back inside. The only time it's clear that he went back inside is when they finally said we're going to break in and that's at the point where he goes downstairs and lets them into the house right before the officers make entry into the home. I see my time is up if there are no further questions we would ask this court to reverse and remand for resentencing. Thank you. Thank you Ms. Quick. Thank you also Mr. Timmons. The court appreciates counsel's participation and argument before us this morning. Consider the case submitted.